IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**BOBBIE LOUIS SANDFORD**                                                    PETITIONER

v.                                                    Criminal No. 2:12cr63-LG-JMV-1
                                                      Civil Action No. 3:15cv190-LG

**UNITED STATES OF AMERICA**                                                 RESPONDENT

<u>**ORDER DENYING MOTION FILED PURSUANT TO 28 U.S.C. §2255**</u>

**BEFORE THE COURT** is the Motion [44] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the petitioner Bobbie Louis Sandford.[1] After carefully reviewing the submissions of the parties and Sandford's trial counsel, the record in this matter, and the applicable law, the Court finds that the Motion should be denied. Since Sandford has failed to satisfy the *Strickland* test for ineffective assistance of counsel, his § 2255 Motion must be denied.

## BACKGROUND

Sandford was indicted for engaging in a fraudulent scheme whereby he convinced two friends — Mr. Larson and Mr. Bayliss — to give him over $489,000 over a period of several years. On October 17, 2012, Sandford agreed to plead guilty to one count of wire fraud and one count of money laundering pursuant to a written plea agreement with the Government. He also agreed to waive his right to appeal his sentence or to attack his sentence collaterally under § 2255. Three additional

---

[1] In pleadings, the petitioner uses the name "Bobby Louis Sanford," but the Court will continue to refer to him as "Bobbie Louis Sandford" since the Judgment entered in this matter utilized that name.

counts of the indictment were dismissed pursuant to the terms of the plea agreement. The presentence investigation report provided for a guideline range of 41 to 51 months. Chief Judge Sharion Aycock sentenced Sandford to 120 months imprisonment and three years of supervised release. Sandford appealed the sentence and the Fifth Circuit affirmed.

Sandford now asks the Court to vacate his sentence based on grounds that his attorney provided ineffective assistance by: (1) failing to advise Sandford of potential affirmative defenses to the wire fraud charge; (2) assuring Sandford that he would receive a sentence of no more than thirty-six months imprisonment;[2] (3) failing to challenge the indictment on the basis that it did not protect Sandford from double jeopardy; (4) failing to challenge the indictment on the basis that Sandford's actions did not violate the federal money laundering statute; and (5) failing to file a motion to recuse Chief Judge Sharion Aycock.[3]

## DISCUSSION

28 U.S.C. § 2255(a) provides four grounds for relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." A defendant may, as part of a plea

---

[2] Sandford included this claim with his claim for failure to advise of potential affirmative defenses, but, for the sake of clarity, the Court will address this issue separately.

[3] Chief Judge Aycock recused herself from handling this case after Sandford filed his 2255 Motion. The case was eventually transferred to the undersigned.

agreement, waive the right to seek post-conviction relief, including relief pursuant to § 2255.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Where, as here, a defendant has pleaded guilty and waived his right to file a motion pursuant to § 2255, the only ineffective assistance of counsel claim to survive the waiver is one claiming the ineffective assistance "directly affected the validity of waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).  Thus, the Court asks "whether the plea or waiver itself was knowing and voluntary, and whether the issue challenged on appeal may properly be the subject of waiver.  If the answer to both questions is 'yes,' then the guilty plea sustains the conviction and sentence and the waiver can be enforced."  *Id.* at 343-44.

Where the waiver does not apply and the defendant may proceed with his ineffective assistance of counsel claim, he must satisfy the two-prong test set forth in *Strickland v. Washington*, 468 U.S. 668 (1984), to establish that he is entitled to relief.  Specifically, he "must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." *Woodward v. Epps*, 580 F.3d 318, 325 (5th Cir. 2009). "[T]o establish deficient performance, a [defendant] must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* (citation, quotation marks, and brackets omitted). "With respect to guilty pleas, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (citation omitted).  A defendant "must show that there is a reasonable probability that, but

-3-

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

## I. FAILURE TO ADVISE OF POTENTIAL AFFIRMATIVE DEFENSE

Sandford argues that he would not have pled guilty if his attorney had told him about exculpatory documents that would have formed the basis for a potential affirmative defense as to the two counts of wire fraud included in the indictment. According to Sandford, "[t]he documents show that contrary to the allegations in the indictment's count one and two, Mr. Larson and Mr. Bayliss were lending money to Mr. [Sandford]." (Mot. at 10, ECF No. 44). Sandford further claims that he repaid Mr. Bayliss in full and he was in the process of repaying Mr. Larson.

First, actual or intended repayment is not necessarily a defense to a charge of wire fraud. *United States v. Daniel*, 329 F.3d 480, 488 (6th Cir. 2003). A conviction of wire fraud requires proof of the specific intent to defraud or deceive. *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002). To prove this intent, "[i]t is sufficient that the defendant by material misrepresentations intends the victim accept a substantial risk that otherwise would not have been taken." *Daniel*, 329 F.3d at 488. Thus, the Government would only have been required to prove that Sandford intended to deprive his victims of money in the short-term. *See id.* Sandford essentially admitted this intent when he gave the following testimony during the sentencing hearing:

[by the Government]

Q: Mr. Sandford, you don't dispute the fact that you've told Mr. Baylis and Mr. Larson a long string of lies in order to get money from them, haven't you?

A: Yes, sir.

Q: That's right? You don't dispute that? You admit you've done that?

A: Yes, sir.

(Tr. at 104, ECF No. 38).

Furthermore, Sandford's attorney has provided a very thorough affidavit in which he testifies that he discussed all of the evidence with Sandford. Sandford's attorney also explains why each of the allegedly exculpatory documents cited by Sandford were not useful to Sandford's defense. For example, the two promissory notes that Sandford relies on are identical even though they allegedly came from two different persons, and Sandford had crossed through the portions of the promissory notes that required him to make payments. Sandford claims that a cashier's check made payable to Attorney Ross Barnett proves that he was truly paying an attorney to overturn his prior rape conviction, but Sandford's trial attorney notes that he interviewed Mr. Barnett, who stated that Sandford never paid him a dime. Sandford admitted during his change of plea hearing that he returned the cashier's checks and cashed or deposited them in his own account by endorsing them "not used for intended purpose." (Tr. at 18, 20, ECF No. 39).

In addition, even if the payments were made to Sandford pursuant to a loan, Sandford would not have needed his attorney to inform him of this. Sandford would surely have been aware of any agreement to repay the funds, and many of the alleged exculpatory documents that Sandford relies on were authored and/or signed by Sandford. (*See* Mot., Ex. B, C, D, F, J, K, L, ECF No. 44-1). A review of the transcript of Sandford's change of plea hearing casts even further doubt on

Sandford's claims that he was unaware of three of the alleged exculpatory documents — a life insurance policy and two promissory notes — because Sandford asked his attorney during the change of plea hearing to mention these documents in an attempt to counter the factual basis. (Tr. at 19-20, ECF No. 39). Since Sandford cannot demonstrate that he was unaware of this alleged affirmative defense or evidence, he cannot demonstrate that he would not have pled guilty if his attorney had informed him of the alleged defense and evidence.

Sandford's attorney provided a vigorous defense against the charges and effectively represented Sandford during his change of plea hearing and at sentencing. Sandford agreed to the factual basis for his plea and admitted his guilt under oath. Therefore, this argument is without merit.

## II. ASSURANCES OF A SENTENCE OF NO MORE THAN THIRTY-SIX MONTHS

Sandford claims that his attorney told him he would receive a sentence of no more than thirty-six months upon pleading guilty. Sandford also claims that his attorney "[a]dvised him that the plea hearing would be confusing, that he should agree to everything the judge said, and that he would handle the situation." (Mot. at 16, ECF No. 44). Sandford has produced two affidavits signed by his daughter Diane Sanford on October 26, 2015. (Mot., Ex. N. ECF No. 44-1). In the first affidavit, she testifies: "I Diane Sanford, met and spoke to attorney Greg Parks, and he mentioned to me if my dad Bobby Sanford pled guilty to his charge with the federal point system he would serve 3-4 years." (*Id.*) In the second affidavit, she testifies:

> I've personally met and spoke [sic] with attorney Greg Parks at his office . . . and during those conversations Mr. Parks repeatedly [sic] assured me that if my dad pled guilty to the charges, he would serve 3-4 years, using the federal point system. Mr. Parks also encourage [sic] me and my family to get as many character letters as possible because that would help reduce his sentence even more.

(*Id.*)

Sandford's former attorney disputes these allegations, providing the following testimony by affidavit: "While I reviewed sentencing guidelines with Sandford at length, it was explained that the Guidelines are advisory and the court has the discretion to impose a sentence of zero days in custody up to the statutory maximum." (Parks Affidavit, ECF No. 76).

At the change of plea hearing, the Court thoroughly addressed Sandford's ability to understand the change of plea proceedings, and she ensured that Sandford was not promised a particular sentence in exchange for pleading guilty. First, Sandford is an educated man, holding a four-year college degree. (Tr. at 4, ECF No. 39). As such, he was capable of understanding the proceedings and the questions asked of him. During the plea colloquy, Sandford stated that he had discussed the plea with his attorney and that he was satisfied with his attorney's representation. *Id.* Sandford also affirmed his understanding that, should he go to trial, he had the right to: (1) maintain his innocence, (2) a public and speedy trial, (3) appointed counsel upon a showing of indigence, (4) a presumption of innocence, (5) cross-examine government witnesses, (6) call witnesses using subpoena power, (7) testify or not testify, and (8) appeal both his conviction and sentence. (*Id.* at 4-7). Sandford likewise stated that he understood the consequences of pleading guilty, including waiver of the rights just

discussed. Sandford acknowledged that, if he pled guilty, the court would adjudicate him guilty, sentence him based upon the finding of guilt, and that he would lose his right to a jury trial. (*Id*. at 7-8).

Then, the Court made sure that Sandford had spoken with his attorney about those rights and understood them:

[By the Court, speaking to Sandford]

Q: Mr. Park[s], did he talk with you about these rights that I have just explained to you?

A: Absolutely.

Q: Do you understand them?

A: Yes, ma'am.

Q: And understanding them, do you wish to proceed and enter a plea to these charges?

A: Yes, ma'am.

(*Id*. at 8).

The Court then reviewed the nature of the charges. Sandford acknowledged that he understood both the charges and the elements that the Government must prove to convict him of those charges. (*Id*. at 8-10). Then he stated that he understood the maximum penalties to which he could be sentenced, including a term of imprisonment of up to twenty years on each charge. (*Id*. at 10-11).

Sandford had also signed a plea agreement which stated, in relevant part:

Apart from being advised of the applicability of the U.S. Sentencing Guidelines, and other than as set forth elsewhere in the plea documents, no promise or representation whatsoever has been made to defendant as to what punishment the Court might impose if it accepts the plea of guilty. This agreement fully reflects all promises, agreements, and

understandings between the defendant and the United States Attorney. The defendant's agreement is knowing, free, and voluntary, and not the product of force, threat, or coercion. The defendant is pleading guilty because defendant is in fact guilty.

(*Id.* at 12-13). The terms of the plea agreement were reviewed in open court, and Sandford concurred with the agreement. (*Id.*) In addition to the plea agreement, he signed a plea supplement, which stated in relevant part:

> There is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court subject to the now advisory Federal Sentencing Guidelines and any statutory mandatory minimums, which have been explained to defendant by defendant's attorney.

(Plea Suppl. at 2, ECF No. 24). As the plea supplement was filed under seal, the Court did not ask the Government to review its terms on the record. Sandford did, however, acknowledge to the Court that he had signed the plea supplement and that he agreed to be bound by all of its terms. (Tr. at 13-14, ECF No. 39).

The Court then made absolutely certain that Sandford understood that the applicable sentencing guidelines were advisory only and that the court could sentence the petitioner to more or less than the sentencing guidelines suggested:

> Q: Has [counsel] discussed with you the possible guidelines that might apply in your case?
>
> A: Yes, ma'am.
>
> Q. I do not know what the guideline might be in your case because I don't have the benefit of a presentence report at this time.
>
> What is important for you to note prior to entering your plea is that the guidelines are advisable or advisory only. Do you understand that?
>
> A. Yes, ma'am.
>
> Q. This Court may impose a sentence more severe or less severe than called for by the guidelines; do you understand?

>    A. Yes, ma'am.

(*Id.* at 15). Sandford further affirmed that no promise had been made to him as to what the sentence would be:

>    Q. Has anyone promised you a sentence in this case, what it will be?
>
>    A. No, ma'am.

(*Id.*)

After Sandford pled guilty to Counts One and Three of the Indictment, the Court ensured once again that Sandford's plea was completely voluntary by asking him whether anyone had threatened him, tried to coerce him, or promised him anything in exchange for his guilty plea. (*Id.* at 20). He responded, "No ma'am." (*Id.*)

Generally speaking, a defendant may not refute his plea hearing testimony given under oath with statements made after conviction. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001). Moreover, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

> In order for a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, he must prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.

*Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989) (internal quotation marks omitted). In order to obtain an evidentiary hearing on the issue, the petitioner "must present the court with independent indicia of the likely merit of his contentions," such as an affidavit. *Id.*

In this case, Sandford cannot overcome the "formidable barrier" he created with his numerous and specific "[s]olemn declarations in open court." *See Blackledge*, 431 U.S. at 73-74. Furthermore, his daughter's affidavits do not establish that promises were made as to the actual sentence that Sandford would receive but solely refer to the expected length of the sentence based on the sentencing guidelines, which was referred to as the "federal point system" by Sandford's daughter. Furthermore, her affidavits do not state exactly when the alleged promises were made, as is required to justify an evidentiary hearing. *See Harmason*, 888 F.2d at 1529. Sandford's daughter's affidavit also conflicts with Sandford's own assertion as to the length of the sentence "promised" — Sandford's daughter testified that a sentence of three to four years was referenced, while Sandford has argued that a sentence of thirty-six months was referenced. Therefore, Sandford has not proved the exact terms of the alleged promise as is required to justify an evidentiary hearing. *See id.* Finally, Sandford's attorney has testified that no such promise was made.

As set forth above, the Court ensured that Sandford understood that he faced up to twenty years' incarceration for each count, that threats, coercion, or promises were not used to convince him to plead guilty, that the guidelines are advisory, that the Court may impose a more severe sentence, and specifically, that no one had promised him

what his sentence would be. Sandford repeatedly stated that he understood these things. Many opportunities to inform the Court of promises of a thirty-six-month sentence (or a three- or four-year sentence) arose during the change of plea hearing, but Sandford never did so. Therefore, Sandford's argument that his attorney promised him a thirty-six-month sentence is without merit, and he has not provided sufficient proof to justify an evidentiary hearing.

### III. FAILURE TO PROTECT SANDFORD FROM DOUBLE JEOPARDY

Sandford argues that his attorney provided ineffective assistance because his attorney did not object to the indictment on the basis that it "failed to identify a specific, identifiable wire." (Mot. at 19, ECF No. 44). Thus, Sandford argues that the indictment potentially subjects him to double jeopardy.

Fed. R. Crim. P. 7(c)(1) provides that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." The Fifth Circuit has explained that "an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. Threadgill*, 172 F.3d 357, 373 (5th Cir. 1999). "The test for the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.*

The elements of wire fraud under 18 U.S.C. § 1343 are "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in

furtherance of the scheme." *United States v. Stanford*, 805 F.3d 557, 566 (5th Cir. 2015). Count One of the Indictment, to which Sandford pled guilty, sets forth in paragraph 10:

> For the purpose of executing the aforesaid scheme and artifice to defraud, the defendant, BOBBIE LOUIS SANDFORD, did cause Kenneth Roger Larson to transmit via interstate wire transfer approximately $190,900.00 to the defendant, in a series of approximately 27 wire transactions from on or about December 14, 2009 to on or about January 11, 2011. These wire transfers were sent as a result of the false and fraudulent pretenses, representations and promises as set forth in paragraphs 3 through 9 herein. Each of the wire transfers were sent from Larson to a bank account at Woodforest National Bank for which BOBBIE LOUIS SANDFORD is the sole account holder. The misrepresentations and actions set forth herein constitute wire fraud in violation of Title 18, United States Code, Section 1343.

(Indictment at 3, ECF No. 1). Therefore, the indictment specified: (1) the number of wire transfers — twenty-seven; (2) the time period; (3) the amount of money transferred; (4) the bank; and (5) an account in Sandford's name.[4] The indictment met the minimum constitutional standards, because it included every statutory element of wire fraud in such a manner as to allow Sandford to prepare a defense, and it was specific enough to allow Sandford to invoke double jeopardy in any subsequent proceedings. As a result, Sandford's attorney did not provide ineffective assistance by failing to object to the indictment.

---

[4] The other wire fraud count in the indictment, which was dismissed pursuant to the plea agreement with the Government, is equally specific.

## IV. FAILURE TO CHALLENGE THE MONEY LAUNDERING CHARGE

Sandford argues that his attorney provided ineffective assistance, because he failed to challenge the money laundering charge in the indictment on the bases of (1) actual innocence and (2) merger.

### A. ACTUAL INNOCENCE

Count Three of the indictment charged that:

> [f]rom on or about February 1, 2010, to on or about November 2, 2010, in the Northern District of Mississippi and elsewhere, BOBBIE LOUIS SANDFORD, defendant did knowingly and willfully conduct and attempt to conduct one or more financial transactions affecting interstate commerce, by obtaining cashier's checks drawn on the proceeds of the money obtained from Kenneth Roger Larson and Robert Bayliss and subsequently returning those cashier's checks and cashing them or depositing them into his account a few days later by endorsing them "not used for intended purpose," and by causing Bayliss to wire money to a nominee account, which transactions involved the proceeds of a specified unlawful activity, specifically the use of mail, interstate carriers, and interstate wire communications to execute the schemes and artifices to defraud set forth in paragraphs 1 through 17 above, knowing that the property involved in that transaction represented proceeds of unlawful activity and with the intent to promote the carrying on of specified unlawful activity, and to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, and to avoid a transaction reporting requirement under State or Federal law, all in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and (a)(1)(B)(2).

The elements of money laundering are:

> (1) an individual conducted or attempted a financial transaction, (2) which he knew involved proceeds arising from unlawful activity, (3) with the intent to promote or further those illegal actions, or (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds.

*United States v. Nguyen*, 215 F. App'x 366, 368-69 (5th Cir. 2007) (quoting *United States v. Pennell*, 409 F.3d 240, 243 (5th Cir. 2005)).

Sandford argues that he was innocent of the promotion prong of the money laundering charge, because "[t]he allegations on the face of the indictment are insufficient to show that the defendant used any of the funds received from the alleged victims to promote any unlawful activity." (Mot. at 24, ECF No. 44). He also claims that there is "no nexus between the wires and the promotion of wire fraud" on the face of the indictment. (*Id.*)

Sandford claims that he is innocent of the concealment prong of the money laundering charge, because he "did not receive and could not reasonably have anticipated receiving any marginal increase in secrecy by depositing money into a bank account with his name on it." (Mot. at 23, ECF No. 44).

Sandford's claim that his attorney should have argued that Sandford was actually innocent of money laundering is without merit. Sandford had told his victims that he needed funds to pay Attorney Ross Barnett in order to overturn a prior rape conviction. After the funds were wired by Sandford's victims, Sandford obtained cashier's checks made payable to Mr. Barnett, so that it would appear that he was using the wired funds to pay Mr. Barnett. However, Sandford returned the cashier's checks and never paid the attorney. Thus, Sandford was attempting to conceal his fraud by issuing the cashier's checks. In fact, Sandford is continuing to use the cashier's check for this very purpose, because he has submitted one of the checks as an exhibit to his 2255 Motion in an effort to persuade the Court that he was really using the wired funds to pay Mr. Barnett. Since Sandford used the cashier's checks in an attempt to conceal the wire fraud and to enable him to

continue his fraudulent schemes, his actions satisfy the elements of money laundering. His attorney did not provide ineffective assistance of counsel by failing to assert this meritless argument.

### B. MERGER

Sandford also argues that he was convicted under two criminal statutes for what is actually a single criminal transaction — a concept known as merger. This is a form of double jeopardy challenge. Sandford claims that his attorney provided ineffective assistance because he failed raise this challenge.

The primary test for determining whether a single set of acts constitutes one or two criminal transactions was adopted in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Under the *Blockburger* test, if "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

Sandford pled guilty to two different offenses. In Count One, he pled guilty to wire fraud under 18 U.S.C. § 1343. In Count Three, he pled guilty to money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), § 1956(a)(1)(B)(i), and 1956(a)(1)(B)(ii). None of the elements of these crimes, which have previously been discussed in this Order, overlap. Sanford's wire fraud offense occurred when he used telecommunications to carry out his scheme of tricking the victims into sending him money. His money laundering offense occurred when he utilized cashier's checks in an attempt to conceal and/or promote his illegal activity. The

wire fraud scheme simply served as the predicate offense giving rise to the separate money laundering offense. There was no merger of the offenses into one criminal transaction, especially since Sandford's "commission of wire fraud was complete before he committed money laundering." *See Stewart v. Keffer*, 514 F. App'x 504, 507 (5th Cir. 2013) (citing *United States v. Halstead*, 634 F.3d 270, 270-71 (4th Cir. 2011)). Thus, Sandford's attorney rendered effective assistance in deciding not to raise this issue, and this claim is without merit.

## V.  FAILURE TO FILE A MOTION TO RECUSE

Sandford also asserts that his attorney provided ineffective assistance by failing to file a motion to recuse Chief Judge Sharion Aycock, because she is a friend of Sandford's brother-in-law. Sandford also notes that his brother-in-law attempted to speak with Chief Judge Aycock about Sandford's case prior to the second part of Sandford's sentencing hearing.[5]

Pursuant to 28 U.S.C. § 455(a), a judge should recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." *Douglas v. Houston Housing Auth.*, 587 F. App'x 94, 98 (5th Cir. 2014). The reasonable person standard in the recusal context contemplates a "well-informed, thoughtful and objective observer." *Id.* "Recusal is required when. objectively speaking, the probability of actual bias on the part of the judge . . . is too high to be

---

[5] The sentencing hearing began on July 26, 2013, and was completed on September 18, 2013.

constitutionally tolerable." *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

There is no indication that the sentence Chief Judge Aycock imposed was affected by her friendship and contact with Sandford's brother-in-law. Her statements at the second part of Sandford's sentencing hearing reveal her fondness for Sandford's brother-in-law, and they reflect that she refused to speak about Sandford's case with his brother-in-law. There is no evidence of judicial bias, nor is there any evidence of a risk of bias. Chief Judge Aycock's contact with Sandford's brother-in-law would not cause a "well-informed, thoughtful and objective observer" to question her impartiality. *See Douglas*, 587 F. App'x at 98. As a result, Sandford's argument of ineffective assistance concerning his attorney's failure to file a motion for recusal is without merit.

## CONCLUSION

For the foregoing reasons, the Court finds that an evidentiary hearing is unnecessary in this case, and Sandford's § 2255 Motion should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [44] under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the petitioner Bobbie Louis Sandford is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 25th day of September, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE